UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DERRICK BLASSINGAME,
    Plaintiff,

      v.

TRIHEALTH, INC., *et al.*,
    Defendants.

Case No. 1:21-cv-395
Marbley, C.J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**


This matter is before the Court on defendant City of Cincinnati's[1] motion to dismiss

(Doc. 7), plaintiff's response in opposition (Doc. 26), the City's reply memorandum (Doc. 28),

and plaintiff's surreply memorandum (Doc. 29).[2]  Pursuant to S.D. Ohio Civ. R. 7.2(a)(2)

(available on the Court's website), surreply memoranda are not permitted "except upon leave of

court for good cause shown."  Plaintiff neither sought nor received leave to file a surreply here.

As he is proceeding pro se, the Court will consider matters contained in this surreply, but future

filings must comply with S.D. Ohio Civ. R. 7.2 or be stricken from the record.

**I.  Background**

    According to his complaint, Derrick Blassingame reported to the Emergency Department

at Good Samaritan Hospital on November 5, 2020, complaining of severe chest pain.  While

waiting to be checked in, he stood in a designated area as instructed by a nurse.  TriHealth

---

[1] In addition to the City of Cincinnati, plaintiff named as defendants in this matter TriHealth, Inc., The Good
Samaritan Hospital of Cincinnati, Jacob Boatright (identified in the complaint as a Security Officer of Public Safety
for TriHealth and the Good Samaritan Hospital), Joyce Carter (identified as Patient Relations Manager of TriHealth,
Inc.), and Steve Gracey (identified as Senior Vice President and General Counsel of TriHealth, Inc.).  (Doc. 3 at
PAGEID 39).  For simplicity, the Court will refer to defendant City of Cincinnati as "the City" and defendants
TriHealth, Good Samaritan Hospital, Boatright, Carter and Gracey collectively as "the healthcare defendants."

[2] The parties also have filed numerous non-dispositive motions that will be addressed by separate order.

security officers then confronted him, pointed tasers at him, and directed him to lay face down on a concrete floor.

Ultimately, Cincinnati Police Officers handcuffed and arrested Blassingame for trespassing and disorderly conduct. Blassingame alleges that the arresting officers "used their influence to distract Mr. Blassingame from his medical coverage by suggesting it was urgent they make an arrest, book him, and claimed that he would be on the docket for 'night court.'" (Doc. 3 at PAGEID 45). Blassingame questioned why he was being arrested and asked to see a doctor for his chest pain. However, the arresting officers "denied Mr. Blassingame treatment services and promised he would be seen [b]y jail medical staff." (Doc. 3 at PAGEID 45). Blassingame alleges that the officers failed to keep that promise. He then filed the instant action alleging that defendants violated the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, and the Rehabilitation Act, 29 U.S.C. § 794.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the City moves to dismiss all claims against it for failure to state claims upon which relief can be granted.[3] (Doc. 7). According to the City, EMTALA applies exclusively to hospitals, and the Rehabilitation Act prohibits discriminating against a person solely by reason of their disability. Because the City is not a hospital and because plaintiff does not allege that the acts of the city "were undertaken solely as a result of his disability"—the City contends—Rule 12(b)(6) requires dismissal of claims against it. (Doc. 7 at PAGEID 73).

---

[3] The City filed its motion to dismiss (Doc. 7) on November 3, 2021. Blassingame failed to timely respond, and the Court entered a show cause order on February 28, 2022 (Doc. 18). After Blassingame failed to respond to the show cause order and the mail sent to the address he provided was returned as "undeliverable," the Court issued a Report and Recommendation that the City's motion to dismiss be granted for failure to diligently prosecute those claims. (Doc. 21). Six weeks after the Court issued its Report and Recommendation, Blassingame reappeared in this action, provided an updated address, and reasonably explained that difficult life events had kept him from timely opposing the City's motion to dismiss. (Doc. 24). The Court withdrew its earlier Report and Recommendation (Doc. 21) and permitted the parties to fully brief the City's arguments for dismissal. (Doc. 25). The motion to dismiss is now ripe for decision.

## II.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss, a complaint must comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

### A.  EMTALA Claim

EMTALA applies exclusively to hospitals with an emergency department, and requires that such hospitals provide individuals with "an appropriate medical screening examination. . . ." 42 U.S.C. § 1395dd(a).  The City contends that, because it is not a hospital, it is not covered by EMTALA.  (Doc. 7 at PAGEID 73).  In his response, Blassingame recognized that he cannot sue

the City for an alleged EMTALA violation. [4] (Doc. 26 at PAGEID 188). Accordingly, the EMTALA claim against the City should be dismissed.

### B. Rehabilitation Act Claim

Section 504 of the Rehabilitation Act provides that, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subject to discrimination under any program or activity receiving Federal Financial assistance. . . ." 29 U.S.C. § 794(a). Under the Rehabilitation Act, a plaintiff must show that he: (1) has a disability under the act; (2) is otherwise qualified for participation in the program; (3) was excluded from participation in, denied the benefits of, or subjected to discrimination under the program solely by reason of his disability; and (4) the program or activity receives federal financial assistance. *G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 635 (6th Cir. 2013).

In this case, the City does not dispute that Blassingame has a disability,[5] is otherwise qualified for participation in the program, and the program is receiving federal financial assistance. The City argues, however, that its "involvement in this matter is limited to responding to the hospital and arresting Plaintiff and Plaintiff does not allege that these acts were undertaken solely as a result of his disability or that they amount to a denial of benefits that he was entitled to receive." (Doc. 7 at PAGEID 73). Therefore, the issue here is whether plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under the program solely by reason of his disability.

---

[4] Plaintiff has emphasized that he did not "concede" on the EMTALA claim as defendant states, but he "offered a compromise that the City of Cincinnati under these set of circumstances may not be sued under EMTALA." (Doc. 29 at PAGEID 220).

[5] Plaintiff alleges that he has a "Slipped Capital Femoral Epiphysis medical device inserted in his right hip, weighs 390 pounds, is morbidly obese, is African American, has hypertension and presented to The Good Samaritan Hospital Emergency Department for chest pains." (Doc. 26 at PAGEID 188).

According to his complaint, the "program" denied to Blassingame was medical treatment for his chest pain.  (Doc. 3 at PAGEID 45).  He alleges that "Defendant the City of Cincinnati by and through the Cincinnati Police Department did in fact interfere in Mr. Blassingame's treatment or care by arresting him for Criminal Trespassing and Disorderly Conduct."  (*Id.*).  However, there is no allegation that officers arrested him solely because he has a hip implant or is morbidly obese.  Indeed, Blassingame's complaint makes no mention of his hip implant and identifies his disability as "cardiac chest pain complications."  (Doc. 3 at PAGEID 50).  He does not allege—nor could he reasonably do so—that officers arrested him solely because he was experiencing cardiac chest pain.  Both Blassingame and the City indicate that police arrested Blassingame at the behest of hospital security personnel.  (Doc. 28 at PAGEID 194; Doc. 28-1 at PAGEID 201, 202).

In addition, there is significant debate concerning whether the Rehabilitation Act even applies in the context of arrests.  *See Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Cnty. Comm'rs*, 870 F.3d 471, 489 (6th Cir. 2017) (concluding that the facts of that case did not require it to determine whether the analogous section of the Americans with Disabilities Act (ADA)[6] applied to arrests and noting that "[n]either the Supreme Court nor this circuit has squarely addressed whether Title II of the ADA applies in the context of an arrest").  Courts have found instances in which a Rehabilitation Act claim is properly alleged against arresting police officers.  *See, e.g., Taylor v. City of Mason*, 970 F. Supp. 2d 776 (S.D. Ohio 2013) (deaf person who called police to report an assault denied American Sign Language interpreter and then arrested).  However, such claims typically involve an arresting officer's failure to accommodate an obvious disability in interacting with the claimant.  *Id.* at 781-782; *Jones v. City of Detroit*,

---

[6] "Both Congress and the Sixth Circuit have dictated that Title II of the ADA be interpreted in a manner consistent with Section 504 of the Rehabilitation Act."  *Taylor v. City of Mason*, 970 F. Supp. 2d 776, 778 (S.D. Ohio 2013).

No. 17-11744, 2019 WL 2355377, at *4 (E.D. Mich. June 4, 2019) (applying the ADA and the Rehabilitation Act where the "benefit" sought "was to be handled and transported in a safe and appropriate manner consistent with his disability" even though "the Sixth Circuit has never held that the ADA [or Rehabilitation Act] applies in the context of police arrests, and there is conflicting precedent on the issue"). The Court was unable to find a single case applying the Rehabilitation Act where, as here, the plaintiff alleged that the arrest itself precluded an arrestee from obtaining a benefit from another entity, and neither party has identified such a case. Because the Rehabilitation Act does not apply to the City under these circumstances and because, even if it did, Blassingame failed to allege sufficient facts to support such a claim, the Rehabilitation Act claim against the City should be dismissed.

In opposing the City's motion to dismiss, plaintiff alleges that the arresting officers ignored his request to adjust his handcuffs and to be seen by jail medical staff. (Doc. 26 at PAGEID 188-189). He also alleges that the City "is liable for acts undertaken by its Police Department in connection with effecting an unlawful arrest and malicious prosecution involving Mr. Blassingame. Mr. Blassingame has a clearly identifiable disability which the city neglected to care for while Mr. Blassingame was in its custody on November 5, 2020." (Doc. 29 at PAGEID 221). These new allegations fail to save his claim against the City.

First, plaintiff makes no such allegations in his complaint. A court, "in reviewing a motion to dismiss, may not consider matters beyond the complaint." *Leeper v. HealthScope Benefits*, No. 2:19-cv-5401, 2020 WL 1290089, at *5 (S.D. Ohio March 18, 2020) (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001)) (district court erred in considering facts stated in memoranda that were not alleged in complaint).[7]

---

[7] The Court notes that Blassingame is pursuing constitutional claims related to this incident via a separate action in the Hamilton County, Ohio Court of Common Pleas. (Doc. 28-1 at PAGEID 199-208).

Second, even if Blassingame were permitted to amend his complaint to include the allegations he introduces in opposing the City's motion to dismiss, he has failed to allege facts sufficient to state a plausible claim against the City. "It is firmly established that a municipality . . . cannot be held liable under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)). To state a claim for relief against the City for his alleged injuries, Blassingame must allege facts showing that the misconduct giving rise to his injuries was the result of a policy, statement, regulation, decision or custom promulgated by the City. *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003)); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). *See Monell*, 436 U.S. at 694; *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). "The 'official policy' requirement [of *Monell*] was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986) (emphasis in original). To state a claim for relief, a "plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright*, 753 F.3d at 660 (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). *See also Polk County v. Dodson*, 454 U.S. 312 (1981) (municipal policy must be "moving force" behind constitutional deprivation).

Blassingame fails to allege any facts showing that the police officer's alleged actions stemmed from a particular policy, custom, or practice of the City that caused a violation of his civil rights. Therefore, even if Blassingame were permitted to amend his complaint to allege the facts included in his opposition memoranda, the complaint, as amended, would fail to state a

7

claim upon which relief may be granted against the City and should be dismissed.

## IT IS THEREFORE RECOMMENDED THAT:

Defendant City of Cincinnati's motion to dismiss (Doc. 7) be **GRANTED**.  This

recommendation applies only to plaintiff's claims against the City and has no impact on

plaintiff's EMTALA and Rehabilitation Act claims against the healthcare defendants.

Date: 8/13/2022

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DERRICK BLASSINGAME,                              Case No. 1:21-cv-395
      Plaintiff,                                    Marbley, C.J.
                                                  Litkovitz, M.J.
      vs.

TRIHEALTH, INC., *et al.*,
      Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).