IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DERRICK BLASSINGAME** | : |
| | : |
| Plaintiff, | : Case No. 1:21-cv-00395-ALM-KLL |
| | : |
| v. | : CHIEF JUDGE ALGENON L. MARBLEY |
| | : |
| **TRIHEALTH, INC.**, *et al.*, | : MAGISTRATE JUDGE LITKOVITZ |
| | : |
| Defendants. | |

**OPINION & ORDER**

On June 1, 2022, this case was transferred to the docket of the undersigned from the Honorable Judge Timothy S. Black of the Western Division. (ECF No. 20). This matter comes before the Court on Plaintiff Derrick Blassingame's Objections (ECF No. 56) to the Magistrate Judge's Report and Recommendation (ECF No. 55) recommending that the Motion to Dismiss filed by Defendant City of Cincinnati, Ohio (ECF No. 7) be granted. For the reasons set forth below, Blassingame's Objections are **OVERRULED**, and the Report is **ADOPTED**. As such, Blassingame's Complaint (ECF No. 3) is **DISMISSED WITH PREJUDICE** to the extent that it alleges claims against Defendant City of Cincinnati.

I. **BACKGROUND**

A. **Factual Background**

The facts of this case as presented by Mr. Blassingame in his Complaint read as follows. On November 4, 2020, Blassingame went to be seen at The Good Samaritan Hospital of Cincinnati, Ohio, complaining of chest pain. (ECF No. 3, ¶11–12). The Good Samaritan Hospital operates in affiliation with TriHealth, Inc., a not-for-profit health system. (*Id.* at ¶8). Blassingame was instructed by the TriHealth Good Samaritan doctors to return if his symptoms worsened. (*Id.* at ¶11). They did worsen, and Blassingame arrived at the hospital's Emergency

Department on the following day for severe chest pain. (*Id.* at ¶12). Blassingame was instructed by a nurse to stand in a designated area as he waited to be checked in. (*Id.*). While waiting, Blassingame was approached by TriHealth Public Safety security officers with tasers drawn. (*Id.*). Blassingame was directed to lay face down on the ground with his hands up and did so under fear of being tased otherwise. (*Id.*). Blassingame's symptoms worsened as a result of being threatened, forced to lie on the concrete floor, and having the knees of multiple security officers placed on his back as they handcuffed him. (*Id.*). Cincinnati Police Officers placed him into custody for Criminal Trespassing and Disorderly Conduct, denying him further medical treatment by suggesting that it was urgent that they arrest him and present him on the docket for "night court." (*Id.* at ¶15).

### B. Procedural

On June 10, 2021, Blassingame, proceeding pro se, filed a complaint against Defendants TriHealth, Inc.; The Good Samaritan Hospital of Cincinnati, Ohio; the City of Cincinnati, Ohio; Jacob Boatright (a TriHealth Public Safety security officer); Joyce Carter (Public Relations Manager for TriHealth, Inc.); and Steve Gracey (Senior Vice President and General Counsel of TriHealth, Inc.). (ECF No. 3). Blassingame sued all Defendants on two counts: (1) violating his rights under the Emergency Medical Treatment and Active Labor Act (EMTALA), codified at 42 U.S.C. § 1395dd, and (2) violating his rights under the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794. (*Id.*)

On November 3, 2021, Defendant City of Cincinnati filed its Motion to Dismiss and/or to Stay. (ECF No. 7). Because she had not received a response in opposition from Blassingame by that point, the Magistrate Judge issued a Report and Recommendation (ECF No. 21) on March 18, 2022, recommending that Defendant City's Motion to Dismiss be granted for lack of

prosecution. On April 28, 2022, the Court granted Blassingame's motion for withdrawal (ECF No. 24) of the R&R, allowing briefing to thereby continue on Defendant City's Motion to Dismiss. (ECF No. 25). From there, Blassingame filed his response in opposition to Defendant City's Motion to Dismiss (ECF No. 26), to which Defendant City replied (ECF No. 28), and then to which Blassingame filed a surreply memorandum (ECF No. 29).

The Magistrate Judge issued the instant Report and Recommendation on Defendant City's Motion to Dismiss on August 15, 2022. (ECF No. 55). The Magistrate Judge noted that Blassingame failed to seek leave to file his surreply as required by S.D. Ohio Civ. R. 7.2(a)(2); however, the Magistrate Judge elected to consider its contents given Blassingame's pro se status. Blassingame filed his objection to the R&R (ECF No. 56), to which Defendant City filed its response in opposition (ECF No. 59).

## II. STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the basis that the Plaintiff failed to state a claim upon which relief may be granted, "[a]ll factual allegations in the complaint must be presumed true, and reasonable inferences must be made in favor of the non-moving party." *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664 (S.D. Ohio 2019). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. LAW AND ANALYSIS

**A. Blassingame's Emergency Medical Treatment and Active Labor Act (EMTALA) Claim**

The Magistrate Judge recommended the dismissal of Blassingame's EMTALA claim. (ECF No. 55 at 4). In her analysis, the Magistrate Judge first noted that the statute "applies exclusively to hospitals with an emergency department, and requires that such hospitals provide individuals with 'an appropriate medical screening examination. . . .'" (ECF No. 55 at 3 (*quoting* 42 U.S.C. § 1395dd(a))). After noting the Blassingame's concession to the City's position that it cannot be sued for an alleged EMTALA violation, the Magistrate Judge recommended dismissal as to that claim. (*Id.* at 3–4).

Although Blassingame submitted objections to the Magistrate Judge's R&R, his only argument with respect to the recommended dismissal of the EMTALA claim is that "[t]he Plaintiff restates his conclusions that the defendant City of Cincinnati cannot be sued for an alleged EMTALA violation as the law currently stands." (ECF No. 56 at 2). The EMTALA's civil enforcement provision applies to "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section," allowing them to, "in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(d)(2)(A); *Moses v. Providence Hosp. & Med. Centers, Inc.*, 561 F.3d 573, 579 (6th Cir. 2009). The statute's language contemplates only that "EMTALA's provision authorizing private suits expressly allows claims against the participating hospital." *Id.* at 587. Given the clear language of the statute and Blassingame's concession that the City cannot be held liable under the statute, the Court adopts in full the R&R recommending dismissal of this claim.

## B. Blassingame's Rehabilitation Act Claim

The Magistrate Judge then turned to Blassingame's Rehabilitation Act claim. (ECF No. 55 at 4). As the Magistrate Judge correctly noted (*Id.*), Section 504 of the Rehabilitation Act of 1973 provides:

> "No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...."

29 U.S.C. § 794. To sustain his claim under the Rehabilitation Act, then, Blassingame must establish the following elements:

> (1) The plaintiff is a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

*G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623, 635 (6th Cir. 2013). The Magistrate Judge recommended the dismissal of this claim because Blassingame did not allege "[he] was excluded from participation in, denied the benefits of, or subjected to discrimination under the program solely by reason of his disability." (ECF No. 55 at 4). Blassingame alleged that the "program" denied to him was medical treatment for his chest pain. (*Id.* at 5). He also identified his disability as "cardiac chest pain complications." (*Id.*). But this

Court finds, as the Magistrate Judge did, that Blassingame did not allege that the officers arrested him solely because he was experiencing cardiac chest pain. (*Id.*) The Magistrate Judge additionally noted that no case had been identified in which the Court applied the Rehabilitation Act to allegations that an arrest precluded an arrestee from obtaining a benefit from *another entity*—neither has the Court. (*Id.* at 6). Finally, the Magistrate Judge correctly noted that Blassingame failed to allege facts showing that the misconduct giving rise to his injuries resulted from a policy, statement, regulation, decision, or custom promulgated by the City (*Id.* at 7), a factual predicate necessary to state a claim for relief against the City for his alleged injuries. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978).

Blassingame produces four objections to this section of the Magistrate Judge's analysis. He first argues that there are *some* cases in which the Rehabilitation Act has been applied in the context of arrests, and that it is proper to do so here because the Cincinnati police interfered with his ability to access "the benefits of receiving emergency medical services." (ECF No. 56 at 4–5). He also argues that the arresting officers were aware of his disability, which was his "morbid obesity." (*Id.*). None of Blassingame's objections, however, rebut the Magistrate Judge's conclusion that no identified case has applied the Act to allegations that an arrest interfered with an arrestee obtaining a benefit from *another* entity (ECF No. 55 at 6). What is more, even assuming that the arresting officers were *aware* of Blassingame's disability, Blassingame does not allege that the officers placed him under arrest "solely by reason" of the same. 29 U.S.C. § 794. As such, the Court dismisses this objection. Second, Blassingame argues that the Court must consider the additional allegations submitted in his Motion in Opposition to

the City's Motion to Dismiss (ECF No. 26).[1] (ECF No. 56 at 5). Notwithstanding precedent holding that, "[w]hen reviewing a motion to dismiss, the district court may not consider matters beyond the complaint," *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009), the Magistrate Judge correctly found that the additional allegations, *even when considered*, do not "save his claim against the City." (ECF No. 55 at 6). Indeed, the new allegations, even if true, would fail to render the City liable for the Cincinnati officers' alleged misconduct under *Monell*. *See Monell*, 436 U.S. at 690. Hence, the Court dismisses this objection. Blassingame's third objection disputes the Magistrate Judge's reasoning that the Court may not consider, on review of Defendant City's Motion to Dismiss (ECF No. 7), the new allegations contained in his Motion in Opposition to the City's Motion to Dismiss (ECF No. 26). Given that the basis for Blassingame's third objection is nearly duplicative of the second, his third objection is thus dismissed on the same basis. Blassingame's fourth and final objection argues that qualified immunity should not apply in this proceeding. (ECF No. 56 at 6). Qualified immunity, however, was never mentioned in the Magistrate Judge's Order. Further, it is "an affirmative defense which must be affirmatively pleaded," *Eng. v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994), but Defendant City never did so. Accordingly, the Court dismisses this objection.

Whether the Court should grant a dismissal with or without prejudice is within its sound discretion under Federal Rule of Civil Procedure 41(a)(2). *See Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962). The Court finds, as the Magistrate did (ECF No. 55 at 7–

---

[1] As summarized by the Magistrate Judge, these additional allegations are "that the arresting officers ignored his request to adjust his handcuffs and to be seen by jail medical staff…and [that] Mr. Blassingame has a clearly identifiable disability which the city neglected to care for while Mr. Blassingame was in its custody on November 5, 2020." (ECF No. 55 at 6).

8), that Blassingame's complaint would fail to state a claim even if he were permitted to amend it to allege the facts he included in his additional briefing. Thus, the Court dismisses Blassingame's claims against Defendant City with prejudice.

IV. **CONCLUSION**

For the foregoing reasons, the Magistrate Judge's Report and Recommendation (ECF No. 55) is **ADOPTED,** and Defendant City's Motion to Dismiss (ECF No. 7) is **GRANTED**. Blassingame's Complaint (ECF No. 3) is thus **DISMISSED WITH PREJUDICE** to the extent it alleges claims against Defendant City. Defendant City is hereby **DISMISSED** from the lawsuit.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 26, 2022**